# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>Franklin Hernand aka Franklin Hernandez<br><br>*Defendant(s)* | Case No. 3:24-mj-70738 MAG |

FILED
May 15 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **April 12, 2024** in the county of **San Francisco** in the **Northern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | -Possession with the intent to distribute a mixture or substance containing a detectable amount of fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide) |

This criminal complaint is based on these facts:

See attached affidavit of DEA TFO Domenico Discenza.

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

Approved as to form  Jeffrey Bornstein
AUSA Jeffrey Bornstein

Domenico Discenza, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/15/2024

*Judge's signature*

City and state:  San Francisco, California

Sallie Kim, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Franklin Hernand ("Hernandez") with 21 U.S.C. §§ 841(a)(1), (b)(1)(C) based on his possessing with the intent to distribute a mixture or substance containing a detectable amount of fentanyl on April 12, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records are referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have worked as a sworn officer for the SFPD for approximately 25 years. I have been assigned as a

Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law, including drug offenses.

5. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7. Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8. I have also had discussions with other law enforcement officers about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. Under 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl, methamphetamine, and cocaine base are a Schedule II controlled substances.

## STATEMENT OF PROBABLE CAUSE

11. On April 12, 2024, HERNANDEZ was arrested by SFPD officers in the area of 7th Street and Market Street in the Tenderloin Neighborhood in San Francisco, California, in the Northern District of California. Based on the facts described below, there is probable cause to believe that HERNANDEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl.

12. At approximately 01:11 a.m. on April 12, 2024, law enforcement personnel engaged in a buy/bust operation in the Tenderloin Neighborhood in the area of 7th Street and

Market. This is a known drug area in San Francisco where a wide variety of controlled substances are bought, sold, and consumed.

13. An undercover officer (UC) in possession of marked city funds and equipped with an audio and recording device was approached by an individual later identified as Franklin Hernandez (HERNANDEZ). HERNANDEZ engaged the UC in conversation as he walked south on 7th toward Stevenson Alley. During the interaction the UC negotiated to purchase $20 dollars' worth of "clean" fentanyl. "Clean is a street term for good quality fentanyl.

14. The UC gave Hernandez $20 dollars and in exchange received suspected fentanyl which later tested presumptive positive. Once in possession of the suspected fentanyl, the UC displayed the pre-arranged buy signal to close cover officers and walked away.

15. Close cover officers were able to observe the interaction between the UC and HERNANDEZ. Based on the buy signal from the UC indicating drugs had been purchased, Officer Guerrero (close cover), provided HERNANDEZ's physical description as wearing a white hooded sweatshirt, black pants, and a black backpack, and directed SFPD units to take the suspect into custody in the area of 7th Street between Market and Stevenson. Once in custody, Officer Guerrero positively identified HERNANDEZ as the same person who sold drugs to the UC Officer.

16. Based on the sale to the UC and the identification by Officer Guerrero, there was probable cause to arrest HERNANDEZ for the distribution of a controlled substance. Officer Cassinelli responded to the area and conducted a search incident to arrest. During the search of HERNANDEZ's person and his backpack, Officer Cassinelli located the $20 dollars of marked city funds, two (2) clear plastic bags of suspected fentanyl, one (1) clear plastic bag of suspected methamphetamine, one (1) functional digital scale and additional U.S. currency in multiple denominations. During a more thorough search of HERNADEZ's backpack, he located a blue toiletry bag containing a fine white powdery substance wrapped in a clear plastic bag. This later tested presumptive positive for cocaine salt. The UC also provided Officer Cassinelli with the purchased drugs, which later tested presumptive positive for fentanyl.

17. At Tenderloin Station, Officer Cassinelli weighed and used the TruNarc Analyzer to field test the suspected controlled substances with the following results.

   a. 2.6 gross grams of suspected fentanyl that had been purchased by the UC tested presumptive positive for fentanyl.

   b. 38.1 gross grams of suspected fentanyl that tested presumptive positive for fentanyl.

   c. 18.8 gross grams of suspected fentanyl tested presumptive positive for fentanyl.

   d. 5.8 gross grams of suspect methamphetamine tested presumptive positive for methamphetamine.

   e. 7.4 gross grams of suspected cocaine tested presumptive positive for cocaine HCL (salt).








18. The multiple denominations of U.S. Currency located on HERNANDEZ"s person was separated into two folded piles. One pile was combined, mixed denominations of a $20, $10, four $5 dollar bills, and fifteen $1 dollar bills totaling $65. The second pile was a combined mixed denominations of $100, ten $20 dollar bills, on $5 dollar bills, and two $1 dollar bills which totaled $307. Additionally, there were two separate $10 bills. I am aware that suspects involved in drug sales will have a variety of U.S. Currency from the sales which is stored in various amounts and used to provide change.

19. Based on my knowledge training, experience, and consultation with other officers I am aware that those engaged in distribution, sales or furnishing will have multiple types of drugs to serve their customers. These may be in larger chunks where a piece might be broken off, weighed, and then provided to the buyer in exchange for U.S. Currency. This is reinforced by the chunks of drugs HERNANDEZ had in his possession and the functional scales. Drug dealers will also have various denominations as proceeds from narcotics sales. The U.S. currency may be kept on their person which is supported by the fact the marked city funds were recovered from Hernandez's person.

20. HERNANDEZ's identity was confirmed through fingerprints. A computer query also revealed that HERNANDEZ had also been arrested under several different names or variations. These names included:

    a. TOCIO CRUZE, JUNIORRUBEN
    b. HERNANDEZ-TURCIOS, FRANKLIN D,
    c. HERNANDEZ, FRANKLIN DANIEL
    d. TUCIO-CRUZ, JUNIOR

21. Based on my knowledge, training, experience, and consultation with other officers, I believe the multiple drugs possessed (fentanyl, methamphetamine, cocaine), the manner of packaging and quantity, the functional digital scale, various denominations of U.S. Currency, and ultimately the sale to the UC indicates the variety of drugs seized were possessed

with the intent to distribute. This conclusion is reinforced by the fact that the sale was done in an area known for narcotics sales and consumption.

## CONCLUSION

22. Based on the information above, there is probable cause to believe that on or about April 12, 2024, HERNANDEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C), based on his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl. Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

/s/
Domenico Discenza
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on May 15, 2024.

_____
HONORABLE SALLIE KIM
United States Magistrate Judge

2090-9967-9745, v. 1